UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DC OPERATING, LLC d/b/a DREAMS; NUVIA HEIDI MEDINA; and MICHELLE CORRAL, | § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | EP-22-CV-00010-FM |
| KEN PAXTON, in His Official Capacity as Attorney General of the State of Texas; ED SERNA, in His Official Capacity as Executive Director of the Texas Workforce Commission; UNKNOWN COMMISSIONER OF THE TEXAS DEPARTMENT OF LICENSING AND REGULATION; RICHARD D. WILES, in His Official Capacity as Sheriff of El Paso County, Texas; and RICARDO A. SAMANIEGO, in His Official Capacity as County Judge of El Paso County, Texas, | § § § § § § § § § § § § § | |
| **Defendants.** | § | |

## ORDER DENYING PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

Before the court are "State Defendants' Brief in Opposition to Preliminary Injunction"
[ECF No. 9], filed January 18, 2022 by Ed Serna in his official capacity as Executive Director of
the Texas Workforce Commission; Ken Paxton, in his official capacity as Attorney General of
the State of Texas; and an unnamed Commissioner of the Texas Department of Licensing and
Regulation in his/her official capacity as Commissioner of the Texas Department of Licensing
and Regulation (collectively, "State Defendants"); "Defendants Ricardo A Samaniego's and
Richard Wiles', in Their Official Capacities, Motion in Opposition to Plaintiffs' Request for
Injunctive Relief" [ECF No. 10], filed January 18, 2022 by Ricardo A. Samaniego, in his Official
Capacity as County Judge of El Paso County, Texas and Richard Wiles, in his Official Capacity

as Sheriff of El Paso County, Texas (collectively, "County Defendants"); and "Plaintiffs'

Memorandum of Law and Fact in Support of Merits of Preliminary Injunction" [ECF No. 11],

filed January 18, 2022 by DC Operating, LLC; Nuvia Heidi Medina; and Michelle Corral

(collectively, "Plaintiffs").  Plaintiffs request a preliminary injunction enjoining Defendants from

enforcing or implementing Senate Bill 315.[1]  After due consideration of Plaintiffs' brief in

support of a preliminary injunction, the State and County Defendants' briefs in opposition, and

the testimony received at the hearing held on January 20, 2022, the request for a preliminary

injunction is **DENIED**.

## I.     BACKGROUND

### A.     Senate Bill 315

This cause concerns a law recently enacted by the Texas Legislature—Senate Bill 315

("S.B. 315").[2]  S.B. 315 is a law "relating to restrictions on the age of persons employed by or

allowed on the premises of a sexually oriented business; creating a criminal offense."[3]  Texas

law defines sexually oriented businesses as any:

> sex parlor, nude studio, modeling studio, love parlor, adult bookstore, adult movie
> theater, adult video arcade, adult movie arcade, adult video store, adult motel, or
> other commercial enterprise the primary business of which is the offering of a
> service or the selling, renting, or exhibiting of devices or any other items intended
> to provide sexual stimulation or sexual gratification to the customer.[4]

S.B. 315 amended various portions of existing Texas laws to effectively raise the

minimum legal age for working in a sexually oriented business from 18 to 21.  First, Section 5 of

S.B. 315 amended Chapter 125 of the Texas Civil Practice & Remedies Code to make it a

---

[1] "Supplemental Index of Documents Filed" ("Index") 76–80, ECF No. 3, filed Jan. 10, 2022.

[2] TEX. S.B. 315, 87TH LEG. R.S. (2021).

[3] *Id.*

[4] TEX. LOC. GOV'T CODE § 243.002.

common nuisance to "employ[] or enter[] into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed at a sexually oriented business as defined by Section 243.002 of the Local Government Code."[5]  Second, Section 6 of S.B. 315 amended several provisions of Chapter 51 of the Texas Labor Code, which regulates "Employment of Children," to provide that "[a] sexually oriented business may not employ or enter into a contract . . . for the performance of work or the provision of a service with an individual younger than 21 years of age."[6]  A violation of this provision now constitutes a Class A misdemeanor subject to a one-year jail sentence, administrative penalties, or a suit for injunctive relief brought by the attorney general of Texas.[7]  Finally, Section 8 of S.B. 315 amended Texas Penal Code Section 43.251 by changing its definition of "child" to mean "a person younger than 21 years of age."[8]  As a result, a person who "employs, authorizes, or induces" someone under the age of 21 to work in or with a sexually oriented business is subject to felony charges.[9]

S.B. 315 was enacted based on the need to "provide necessary mechanisms to safeguard our communities and children from trafficking and sexual exploitation, which are often harmful secondary effects of sexually oriented businesses."[10]  Specifically, according to State Defendants, S.B. 315 is designed to reduce trafficking at sexually oriented businesses by raising

---

[5] TEX. S.B. 315, § 5, 87TH LEG. R.S. (2021) (amending TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19), (22)).

[6] TEX. S.B. 315, § 6, 87TH LEG. R.S. (2021) (amending TEX. LAB. CODE § 51.016(b)).

[7] TEX. S.B. 315, § 7, 87TH LEG. R.S. (2021).

[8] TEX. S.B. 315, § 8, 87TH LEG. R.S. (2021) (amending TEX. PENAL CODE § 43.251(a)(1)).

[9] *Id.* at § 43.251(a)–(c).

[10] SENATE RESEARCH CENTER, BILL ANALYSIS, TEX. S.B. 315, 87TH LEG. R.S. (2021).

the minimum age of employment at these establishments from 18 to 21, thereby increasing the life experience and maturity of their employees and making them less vulnerable to trafficking.[11] Further, State Defendants contend raising the minimum employment age for sexually oriented businesses from 18 to 21 makes it more difficult for human traffickers to use these establishments for trafficking.[12]

   B.   *Factual Background*

Plaintiff DC Operating LLC, doing business as Dreams, is a non-alcohol, all-nude, adult cabaret entertainment club in El Paso, Texas.[13] Dreams qualifies as a sexually oriented business. Plaintiffs Nuvia Heidi Medina and Michelle Corral are exotic dancers under the age of 21 currently employed by Dreams.[14]

Plaintiff Nuvia Heidi Medina is a 20-year-old woman employed as an exotic dancer by Dreams for approximately 14 months.[15] She received her license to perform in cabaret venues in El Paso, Texas from the El Paso County Sheriff's Department.[16] Her license expires in September of 2022.[17] Plaintiff Nuvia Heidi Medina earns upwards of $1,000 per night working at Dreams.[18] Further, she has never observed a human or sex trafficker on the premises of

---

[11] "State Defendants' Brief in Opposition to Preliminary Injunction" ("State Def. Br.") 3, ECF No. 9, filed Jan. 18, 2022.

[12] *Id.*

[13] *See* "Plaintiffs' Memorandum of Law and Fact in Support of Merits of Preliminary Injunction" ("Pl. Br.") 5 ¶ 15, ECF No. 11, filed Jan. 18, 2022.

[14] Index at 115–25.

[15] "Transcript of Temporary Injunction Hearing Via Zoom" ("Tr.") 40 ¶ 1–7, ECF No. 20, entered Feb. 4, 2022.

[16] *Id.* at 40 ¶ 13–14.

[17] *Id.* at 40 ¶ 15–16.

[18] *Id.* at 41 ¶ 20–25.

Dreams.[19]  Due to S.B. 315, Plaintiff Nuvia Heidi Medina is afraid of losing her job as it gives her the freedom to express herself through dancing.[20]

Plaintiff Michelle Corral is a 19-year-old woman employed as an exotic dancer by Dreams for approximately 12 months.[21]  Her license to perform in cabaret venues in El Paso, Texas expires in February of 2022.[22]  She has never observed a human or sex trafficker on the premises of Dreams.[23]  Plaintiff Michelle Corral testified that dancing is not difficult for her— she listens to the beat of the music playing and dances to it.[24]

Plaintiffs challenge the constitutionality of S.B. 315, alleging S.B. 315's amendments transgress the United States Constitution's First Amendment guarantees of freedom of speech and association, Fourteenth Amendment's Equal Protection Clause and Due Process Clause, and the Texas Constitution's equivalent provisions.[25]  Further, Plaintiffs contend S.B. 315 renders the Texas statutes it amended fatally vague and overbroad.[26]  Accordingly, Plaintiffs request a preliminary injunction against enforcement of S.B. 315 by Defendants.[27]

Defendant Ken Paxton is the Attorney General of Texas.[28]  As such, he is specifically authorized to enforce Chapter 125 of the Texas Civil Practice & Remedies Code and Chapter 51

---

[19] *Id.* at 45 ¶ 7–9.

[20] *Id.* at 41 ¶ 14–18.

[21] Id. at 58 ¶ 2–9.

[22] *Id.* at 60 ¶ 1–6.

[23] *Id.* at 49 ¶ 1–6.

[24] Id. at 61 ¶ 8–11.

[25] Index at 54.

[26] *Id.*

[27] *Id.* at 76–80.

[28] *Id.* at 42–43.

of the Texas Labor Code.[29]   Defendant Ed Serna is the Executive Director of the Texas

Workforce Commission ("Commission").[30]   He is charged with the agency's day-to-day

operations, including implementing policies set by the Commission and enforcing the Labor

Code.[31]   Defendant Unnamed Commissioner of the Texas Department of Licensing and

Regulation issues licenses.[32]   Defendant Ricardo A. Samaniego is an El Paso County Judge.[33]

Lastly, Defendant Richard D. Wiles is the El Paso County Sheriff.[34]   Sheriff Wiles is charged

with issuing exotic dancers' licenses to perform in cabaret venues in El Paso County, Texas, and

enforcing the Texas Penal Code.[35]   Both State and County Defendants oppose Plaintiffs' request

for a preliminary injunction as they contend Plaintiffs cannot establish a substantial likelihood of

success on the merits of their claims; Plaintiffs will not suffer irreparable harm; and the public

interest and potential harm to Defendants weight against granting Plaintiffs' request.[36]

Subsequently, Defendant Ricardo A. Samaniego and Defendant Unnamed Commissioner

of the Texas Department of the Licensing and Regulation were dismissed as parties in this cause

by the court as Plaintiffs conceded that neither played a role in the enforcement of the statute at

issue.[37]

---

[29] *Id.*

[30] *Id.* at 43.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 44.

[34] *Id.*

[35] *Id.*

[36] State Def. Br. at 5–10; "Defendants Ricardo A Samaniego's and Richard Wiles', in their Official Capacities, Motion in Opposition to Plaintiffs' Request for Injunctive Relief" ("Cnty. Def. Br.") 6–12, ECF No. 10, filed Jan. 18, 2022.

[37] "Partial Order of Dismissal" 1, ECF No. 15, entered Jan. 25, 2022.

### C.      Procedural Background

On December 13, 2021, Plaintiffs filed "Plaintiffs' Original Petition for Declaratory and Injunctive Relief Under the Uniform Declaratory Judgment Act" in state court alleging S.B. 315 violates both the Texas Constitution and United States Constitution.[38]  Additionally, Plaintiffs requested a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction against enforcement of S.B. 315.[39]  Plaintiffs then filed their "First Amended Petition for Declaratory and Injunctive Relief Under the Uniform Declaratory Judgment Act" on December 19, 2021 raising the identical allegations and requesting the identical relief.[40]  On December 24, 2021, the state court issued a TRO enjoining Defendants from enforcing S.B. 315 until January 7, 2022.[41]  Further, the state court set a hearing for January 7, 2022 to determine whether the TRO should be converted to a preliminary injunction pending a full trial on the merits.[42]  On January 4, 2022, Defendants removed this matter to federal court.[43]  Due to the recency of removal, this court extended the TRO issued by the state court to January 20, 2022.[44] A hearing on the merits of a preliminary injunction was held before this court on January 20, 2022.[45]

---

[38] "Notice of Removal" ("Not.") 1, ECF No. 1, filed Jan. 4, 2022, Exhibit E, "Original Petition for Declaratory and Injunctive Relief Under the Uniform Declaratory Judgment Act" 4, ECF No. 1-5, filed Dec. 13, 2021.

[39] *Id*. at 32–45.

[40] Index at 38.

[41] *Id*. at 245–51.

[42] *Id*.

[43] Not. at 1.

[44] "Order Extending Temporary Restraining Order and Setting Hearing on Preliminary Injunction" 1, ECF No. 2, entered Jan. 6, 2022.

[45] *Id*. at 2.

## II.   **LEGAL STANDARD**

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."[46] In order to prevail on a motion for a preliminary injunction, the movant must clearly establish:

> (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.[47]

A movant need not prove it is entitled to summary judgment to show a likelihood of success.[48] Rather, the movant must present a *prima face* case.[49]

If the movant fails to carry its burden on any one of the four elements, the court must deny the request for preliminary injunctive relief.[50]  Even when the movant carries its burden of persuasion on all four elements, the decision to grant or deny relief is left to the sound discretion

---

[46] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985)).

[47] *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003)).

[48] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

[49] *Id.*

[50] *Holland*, 777 F.2d at 997.

of the district court.[51]  A movant who obtains a preliminary injunction must post a bond to secure

the non-movant against any wrongful damages it suffers as a result of the injunction.[52]

## III.   <u>DISCUSSION</u>

>    A.    *Substantial Likelihood of Success on the Merits of Plaintiffs' First Amendment Claims*

Plaintiffs allege S.B. 315 (1) violates their right to engage in protected forms of

expression; (2) violates their right to engage in association for expressive purposes; and (3) is

overbroad under the First Amendment to the United States Constitution.  The court analyzes

each claim in turn.

>    1.    <u>Free Expression</u>

The First Amendment to the United States Constitution states that "Congress shall make

no law . . . abridging the freedom of speech."[53]  While the First Amendment only explicitly

applies to the federal government, it has been applied to the states through the incorporation

doctrine of the Fourteenth Amendment.[54]

As an initial matter, the court must determine whether the First Amendment protects the

conduct at issue.  Although, "[t]he First Amendment literally forbids the abridgment only of

'speech' . . . conduct may be 'sufficiently imbued with elements of communication to fall within

the scope of the First and Fourteenth Amendments.'"[55]  "In deciding whether particular conduct

possesses sufficient communicative elements to bring the First Amendment into play," the court

---

[51] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

[52] *See* Fed. R. Civ. P. 65(c).

[53] U.S. Const. amend. I.

[54] Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 822 (1995).

[55] *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (internal citations omitted).

must ask "whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'"[56]   At issue is erotic nude dancing.  The Supreme Court has found that nude dancing of the type performed at Dreams is "expressive conduct" which falls "within the outer ambit of the First Amendment's protection."[57]   As such, S.B. 315 must be analyzed to ensure it does not unduly impair the exercise of Plaintiffs' First Amendment rights.

> a.   *Whether the Regulation is Related to the Expressive or Non-Expressive Parts of the Conduct*

As the conduct at issue is expressive, the court must "next decide whether the State's regulation is related to the suppression of free expression.  If the State's regulation is not related to expression, then the less stringent standard [] in *United States v. O'Brien* for regulations of noncommunicative conduct controls."[58]   If the regulation is related to expression, the law is content-based and strict scrutiny applies.[59]   Specifically, the court must determine whether the state has asserted an interest in support of the regulation that is unrelated to the suppression of expression.[60]   The court will not probe into the legislature's motive in enacting the statute for an illicit purpose.[61]

Defendants provide ample evidence that S.B. 315's purpose is to prevent human trafficking, not suppress expressive conduct.[62]   Moreover, courts have routinely found legislation

---

[56] *Id*.

[57] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000).

[58] *Johnson*, 491 U.S. at 403 (internal citations omitted).

[59] *Id.*

[60] *Id*. at 407.

[61] *O'Brien v. United States*, 391 U.S. 367, 383 (1968).

[62] State Def. Br. at 5; Cnty. Def. Br. at 7.

intending to prevent the secondary effects—e.g., human trafficking—of sexually oriented businesses to be aimed at the non-expressive parts of expressive conduct.[63]  Indeed, the State's purpose is "to alleviate undesirable social problems that accompany erotic dance studios, not to curtail the protected expression—namely, the dancing."[64]  As such, the court analyzes Plaintiffs' claim under the test set forth in *O'Brien*.

> b.      *Application of Intermediate Scrutiny*

A statute survives intermediate scrutiny under *O'Brien* "[1] if it is within the constitutional power of the Government; [2] it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on the alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."[65]

The first factor is uncontested by Plaintiffs and deemed satisfied by the State.  Texas' regulation is within the constitutional power of the Texas government pursuant to the Texas Constitution, Article III, Section 1.[66]  As to the second factor, Defendants contend that S.B. 315 furthers the State's important or substantial governmental interest in reducing human trafficking.[67]  Specifically, Defendants argue by raising the minimum age of employment at sexually oriented businesses from 18 to 21, employees of these establishments will have more

---

[63] *See Doe I v. Landry*, 909 F.3d 99, 107 (5th Cir. 2018); *Wacko's Too, Inc. v. City of Jacksonville*, 522 F. Supp. 3d 1132, 1160 (M.D. Fla. 2021)

[64] *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1059 (9th Cir. 1986).

[65] *O'Brien*, 391 U.S. at 377.

[66] State Def. Br. at 5; TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'").

[67] State Def. Br. at 5; Cnty. Def. Br. at 7.

life experience and maturity and will therefore be less vulnerable to trafficking.[68]  Additionally, for the following reasons, they argue raising the minimum employment age for sexually oriented businesses from 18 to 21 makes it harder for human traffickers to use these establishments for trafficking.[69]  First, raising the minimum employment age makes it easier for law enforcement to identify underaged persons entering sexually oriented businesses.[70]  Second, raising the minimum employment age makes it more difficult for traffickers to obtain fake identification for underage workers.[71]  Third, hiring managers at sexually oriented businesses can more easily identify underaged prospective employees posing as adults.[72]

To satisfy the second factor, Defendants need only establish "a reasonable belief that there is a link between the regulation and the curbing of the identified secondary effects."[73]  To rebut the State's rationale, Plaintiffs can either "[demonstrate] that the [State's] evidence does not support its rationale or [furnish] evidence that disputes the [State's] factual findings."[74]  Defendants provide ample documentation as to the correlation between raising the minimum employment age and reducing human trafficking, including the declaration of the Chief of the Texas Attorney General's Human Trafficking and Transnational Organized Crime Division[75] and

---

[68] State Def. Br. at 3.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Doe I*, 909 F.3d at 110.

[74] *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002).

[75] State Def. Br. at 1, Exhibit C, "Bill Analysis" 2–3, ECF No. 9-3, filed Jan. 18, 2022.

a bill analysis of S.B. 315 with the legislation's background and purpose.[76]  Plaintiffs provide no evidence to call into question the State's purpose.  As such, the court determines the State has satisfied the second factor.

Regarding the third factor, Defendants argue the State's interest in reducing human trafficking is unrelated to suppressing free exercise.[77]  The court has already found the motivation for enacting S.B. 315 is unrelated to erotic dancing or the message it conveys.  As such, the State has satisfied the third factor of *O'Brien*.

Lastly, Defendants assert the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the State's interest as this is the State's way of protecting 18- to 20-year-olds.[78]  "Narrow tailoring exists when the 'regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"[79] The State must show "the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'"[80]  Defendants have presented evidence that human trafficking is specifically prevalent at sexually oriented businesses. Additionally, Plaintiffs make no argument that the State's "interest could be adequately served by some less-speech-restrictive alternative."[81]  Therefore, the court determines the State has met the fourth factor.

---

[76] State Def. Br. at 1, Exhibit A, "Declaration of Cara Foos Pierce" 2–4, ECF No. 9-1, filed Jan. 18, 2022.

[77] State Def. Br. at 5; Cnty. Def. Br. at 7.

[78] State Def. Br. at 5; Cnty. Def. Br. at 7.

[79] *Doe I*, 909 F.3d at 112–13.

[80] *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

[81] *Ward*, 491 U.S. 799–800.

While discovery may reveal that the State's stated interest in curbing trafficking is not served at all by S.B. 315's age restrictions, at this time, Defendants have satisfied all four prongs of *O'Brien* and S.B. 315 survives intermediate scrutiny. As such, Plaintiffs fail to establish a substantial likelihood that they will prevail on the merits of their free expression claim.

### 2.   Freedom of Association

The First Amendment to the United States Constitution protects the "freedom to associate and privacy in one's associations."[82] The freedom of association includes expressive association, such as the right to associate while engaging in First Amendment activities, and intimate association, the right to enter into and maintain certain intimate human relationships.[83] Plaintiffs allege S.B. 315 violates their right to engage in association for expressive purposes.

Plaintiffs are correct that "the First Amendment protects the entertainers and audience members' right to free expressive association . . . [as t]hey are certainly engaged in a 'collective effort on behalf of shared goals.'"[84] As described by the Sixth Circuit in *Deja Vu of Nashville*, "[t]he dancers and customers work together as speaker and audience to create an erotic, sexually-charged atmosphere, and although society may not find that a particularly worthy goal, it is a shared one nonetheless."[85] Nevertheless, the right to associate for expressive purposes is not absolute. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through

---

[82] *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958).

[83] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984).

[84] *Deja Vu of Nashville v. Metro. Gov't of Nashville*, 274 F.3d 377, 396 (6th Cir. 2001) (citing *U.S. Jaycees* at 622).

[85] *Id.*

means significantly less restrictive of associational freedoms."[86]  At this time, Plaintiffs have failed to meet the burden on their freedom of association claim.  Plaintiffs do not allege that S.B. 315 fails to serve a compelling purpose nor that S.B. 315 can be achieved by less restrictive means.  Therefore, Plaintiffs fail to establish a substantial likelihood that they will prevail on the merits of their freedom of association claim.

3. <u>Facial Overbreadth</u>

The overbreadth doctrine permits an individual to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that [a] statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."[87]  "[W]here a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[88]  The "strong medicine" of overbreadth analysis is inappropriate where the plaintiff fails to describe the instances of arguable overbreadth of the contested law.[89]

Plaintiffs argue "it is impossible to compare S.B. 315's legitimate and illegitimate sweep [as] its sweep is total: all 18-20-year-old men and women and all [sexually oriented businesses] are denied the right to partake in any kind economic relationship involving all forms of free expression and liberty."[90]  For example, "[n]ineteen-year-old persons, like Plaintiff Medina and

---

[86] *U.S. Jaycees* at 623.

[87] *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 612 (1973).

[88] *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) (internal quotation marks omitted).

[89] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n. 6 (2008) (internal quotation marks omitted).

[90] Index at 58–59.

Plaintiff Corral, cannot be hired to provide live or recorded dance, music, or even decorate the interior of [a sexually oriented business] or perform expressive, exotic dancing at DC Operating LLC, doing business as Dreams."[91]  At this time, Plaintiffs fail to establish instances of arguable overbreadth to convey to the court that the scope of S.B. 315 is substantially overbroad. Therefore, Plaintiffs cannot establish a substantial likelihood that they will prevail on the merits of their facial overbreadth claim.

> B.    *Substantial Likelihood of Success on the Merits of Plaintiffs' Due Process Clause Claims*

Plaintiffs allege S.B. 315 (1) violates their substantive due process right to enjoy occupational liberty without arbitrary interference from the State; (2) deprives them of privileges, licenses, certificates, and franchises that qualify as property interests for purposes of procedural due process; and (3) is void for vagueness pursuant to the Due Process Clause of the Fourteenth Amendment.  Plaintiffs also bring an analogous claim under the Texas Constitution, which the court evaluates in tandem.[92]  The court analyzes each claim in turn.

> 1.    <u>Substantive Due Process</u>

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."[93]  The Due Process Clause includes a "substantive" component as well as a "procedural" component.[94]  Substantive

---

[91] *Id.*

[92] TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.");  *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 86 (Tex. 2015) ("[T]he Texas due course of law protections in Article I, § 19, [align] with the protections found in the Fourteenth Amendment to the United States Constitution.").

[93] U.S. CONST. amend. XIV, § 1.

[94] *Reyes v. North Texas Tollway Auth.*, 861 F.3d 558, 562 (5th Cir. 2017).

due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."[95]   To establish a substantive due process violation, the aggrieved party must describe the infringed right with particularity and must establish it as "deeply rooted in this Nation's history and tradition."[96]   If a right is so "deeply rooted" as to be fundamental at its core, a more exacting scrutiny is required; if not, the court applies the less demanding rational basis review.[97]

Plaintiffs contend S.B. 315 deprives them of their occupational liberty as it functions to criminalize and therefore completely prohibit their right to work at a sexually oriented business.[98]   Indeed, the Due Process Clause recognizes a "protected liberty interest in pursuing [one's] chosen occupation."[99]   However, such interest is deemed a mere liberty interest, not a fundamental right.[100]   As such, S.B. 315 need only be rationally related to a legitimate State interest.[101]   Plaintiffs fail to establish that S.B. 315 is not rationally related to the State's interest in preventing human trafficking.   Therefore, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their substantive due process claim.

2.   Procedural Due Process

---

[95] *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

[96] *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006) (internal quotation marks and citations omitted).

[97] *Id.*

[98] Index at 62.

[99] *Stidham v. Texas Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005); *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) ("[T]his Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation.").

[100] *Conn*, 526 U.S. at 291–92.

[101] *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 490 (1955).

17

Procedural due process requires the government to follow appropriate procedures when its agents "deprive any person of life, liberty, or property."[102]  To succeed on a deprivation of procedural due process claim, the plaintiff must show: (1) she possessed a protected interest to which due process protections were applicable; and (2) she was not afforded an appropriate level of process in the deprivation of that interest.[103]

Plaintiffs state prior to S.B. 315's enactment, Plaintiffs obtained sexually oriented business licenses from El Paso County so they could lawfully work at or for a sexually oriented business.[104]  Once S.B. 315 went into effect, the occupational rights that Plaintiffs enjoyed under the grant of these licenses were nullified.[105]  "Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process."[106]  This is since a license "may become essential in the pursuit of a livelihood."[107]  Thus, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."[108]  Although Plaintiffs allege a deprivation of a protected property interest, at this time, Plaintiffs do not fully elaborate on how they were provided an insufficient level of process in the deprivation of that interest.  Therefore, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their procedural due process claim.

---

[102] *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

[103] *Morris v. Livingston*, 739 F.3d 740, 750 (5th Circ. 2014).

[104] Index at 63.

[105] *Id*.

[106] *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977).

[107] *Bell v. Burson*, 402 U.S. 535, 539 (1971).

[108] *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

3.    Void for Vagueness

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."[109]  Thus, "the void-for-vagueness doctrine [under the Due Process Clause] requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[110]  To sustain a vagueness challenge, a statute must be unconstitutionally vague in all its applications, "including its application to the party bringing the vagueness challenge."[111]  A statute is vague in all its applications when "men of common intelligence must necessarily guess at its meaning."[112]  Challenges based on vagueness may be overcome in any specific case where reasonable persons would know that their conduct is at risk.[113]

Plaintiffs argue S.B. 315's amendments to the Texas Labor Code and Civil Practice and Remedies Code render the codes vague as they fail to specify what "work" or "services" may or may not be provided by an individual younger than 21-years-old to a sexually oriented business.[114]  Section 51.016(b) of the Texas Labor Code as amended provides that "[a] sexually oriented business may not employ or enter into a contract . . . for the performance of work or the provision of a service with an individual younger than 21 years of age."[115]  Chapter 125 of the

---

[109] *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

[110] *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also United States v. Daniels*, 247 F.3d 598, 600 (5th Cir. 2001).

[111] *United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009) (citations omitted).

[112] *Id*. at 613 (internal quotation marks omitted) (citation omitted).

[113] *Id*. (internal quotation marks) (citation omitted).

[114] Index at 64.

[115] TEX. S.B. 315, § 6, 87TH LEG. R.S. (2021) (amending TEX. LAB. CODE § 51.016(b)).

Texas Civil Practice & Remedies Code as amended makes it a common nuisance to "employ[] or enter[] into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed at a sexually oriented business as defined by Section 243.002 of the Local Government Code."[116]  Plaintiffs fail to establish that the terms "work" or "services" as used in the Texas Labor Code and Civil Practice and Remedies Code are such that "men of common intelligence must necessarily guess at [their] meaning."[117]  Therefore, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their void for vagueness claim.

C.    *Substantial Likelihood of Success on the Merits of Plaintiffs' Equal Protection Clause Claims*

Plaintiffs allege S.B. 315 (1) burdens Plaintiffs' fundamental rights; (2) discriminates on the basis of age; and (3) singles out sexually oriented businesses for discriminatory treatment pursuant to the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs also bring an analogous claim under the Texas Constitution, which the court evaluates in tandem.[118]  The court analyzes each claim in turn.

1.    Fundamental Right

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[119]  The Equal

---

[116] TEX. S.B. 315, § 5, 87TH LEG. R.S. (2021) (amending TEX. CIV. PRAC. & REM. CODE § 125.0015(a)(19), (22)).

[117] *Clark*, 582 F.3d 607 at 613 (internal quotation marks omitted) (citation omitted).

[118] TEX. CONST. art. I, § 3 ("All free men, when they form a social compact, have equal rights."); *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002) ("[The] federal analytical approach applies to equal protection challenges under the Texas Constitution.").

[119] U.S. CONST. amend. XIV, § 1.

Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."[120]  Where a government actor enacts a classification "that disadvantage[s] a 'suspect class,' or . . . impinge[s] upon the exercise of a 'fundamental right," a reviewing court will apply strict scrutiny.[121]  However, the Equal Protection Clause "does not forbid [all] classifications."[122]  In cases where neither a suspect class nor a fundamental right is implicated, the appropriate standard of review is rational basis.[123]  The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.[124]  The party challenging the classification bears the burden of demonstrating that it lacks a rational basis.[125]

Plaintiffs allege S.B. 315 renders them categorically ineligible to provide any form of work involving expressive activity at or for a sexually oriented business and, thus, burdens Plaintiffs' fundamental rights.[126]  However, Plaintiffs have not established that providing work involving expressive activity at or for a sexually oriented business is a fundamental right.  As such, S.B. 315 need only be rationally related to a legitimate State interest.  Plaintiffs fail to establish that S.B. 315 is not rationally related to the State's interest in preventing human

---

[120] *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

[121] *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

[122] *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

[123] *Id.* at 365 (quoting *Nordlinger*, 505 U.S. at 11).

[124] *Cleburne Living Ctr.*, 473 U.S. at 440.

[125] *Id*.

[126] Index at 67.

trafficking.  Consequently, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their impingement of a fundamental right claim.

### 2.    Age Discrimination

Plaintiffs contend S.B. 315 discriminates against them on the basis of age.[127]  Plaintiffs argue that imposing severe economic hardship on a narrow band of young adults to ostensibly combat crimes that may be visited upon almost any adult at any age is patently inconsistent with equal protection of the laws.[128]  However, age is not a suspect classification under the Equal Protection Clause.[129]  Further, Plaintiffs do not maintain that the State's actions were unrelated to combatting trafficking.  Therefore, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their age discrimination claim.

### 3.    Discrimination Against Sexually Oriented Businesses

Plaintiffs argue S.B. 315 singles out sexually oriented businesses for discriminatory treatment.[130]  Status as a sexually oriented business is not a suspect classification.[131]  Additionally, Plaintiffs do not maintain that S.B. 315 is unrelated to reducing trafficking.  Therefore, Plaintiffs do not establish a substantial likelihood that they will prevail on the merits of their sexually oriented business status discrimination claim.

## IV.    **CONCLUSION**

---

[127] Index at 68.

[128] *Id*.

[129] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000).

[130] Index at 68.

[131] *See Sonnier v. Quarterman*, 476 F.3d 349, 368 n.17 (5th Cir. 2007) ("A suspect class, as used in an equal protection analysis, is one saddled with such disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.").

As Plaintiffs have failed to establish a likelihood of success on the merits of their claims under the First Amendment, Fourteenth Amendment Due Process and Equal Protection Clauses of the United States Constitution, and the Texas Constitution's equivalent provisions, the court finds a preliminary injunction is not appropriate at this time.  Furthermore, as Plaintiffs failed to establish a likelihood of success on the merits of their claims, the court need not evaluate the remaining preliminary injunction factors.  Accordingly, it is **HEREBY ORDERED** that Plaintiffs' request for a preliminary injunction is **DENIED**.

**SIGNED AND ENTERED** this **17th** day of **February 2022**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**